STATE EX REL. GREAT NORTHERN RY. CO., RESPONDENTS, v. STATE BOARD OF EQUALIZATION, ET AL., APPELLANTS.

No. 9056.

Submitted January 21, 1952. Decided May 20, 1952.

Rehearing denied August 5, 1952.

246 Pac. (2d) 20.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles C. Huppe, Asst. Atty. Gen., Mr. H. O. Vralsted, Tax Counsel, Bd. of Equalization, Mr. Daniel J. Sullivan, Asst. Tax Counsel, Helena, for appellants.

Messrs. Weir, Gough and Matson, Helena, for respondent.

Mr. Vralsted and Mr. Enor K. Matson argued orally.

MR. JUSTICE METCALF:

This cause has been before the court in a previous case reported under the same title in 121 Mont. 583, 194 Pac. (2d) 627, 628. In that case this court said: "The principal question involved is whether a purchaser of gasoline who has paid the gasoline license tax of 5 cents per gallon is entitled to a refund of the tax when the gasoline is destroyed in transit." In answer to that question this court held: "It is our view that the trial court properly held that the purchaser of the gasoline in question was entitled to a refund if other provisions of the law were met."

Other issues were also raised in that case and resolved in favor of the Great Northern Railway Company. However, the cause was remanded to the district court for an amendment to the pleadings because the petition for the writ of mandate did not allege that the invoice accompanied the claim for refund.

The previous decision of this court that the Great Northern Railway Company was entitled to a refund if other provisions of the law were met has become the law of the case. "It is an inflexible rule that our decision on a former appeal, whether right or wrong, is binding alike on the parties and the

courts in the same action.'' Libin v. Huffine, 124 Mont. 361, 224 Pac. (2d) 144, 146, 4 St. Rep. 155.

The question now before the court is whether the claim for refund presented in the amended pleading adequately meets the requirements of the statute and the administrative regulations of the board. The controlling statute is Chapter 67, Laws of 1939, section 1 of which provides: ''That any person who shall purchase and use any gasoline * * * shall be allowed and paid as a refund * * * upon presenting to the board of equalization of the State of Montana * * * a sworn statement, accompanied by the invoice or invoices issued to the claimant at the time of purchase of such gasoline showing such purchase and use, which statement shall set forth in words and figures, the total amount of the gasoline so purchased, and the purpose for which the same was actually used, the amount of the tax and such additional information as may be required by said board on forms to be furnished by them. * * * When gasoline is sold to a person who shall claim to be entitled to a refund of the tax imposed, the seller of such gasoline shall make and deliver at the time of such sale separate invoices for each purchase on invoice forms approved by the state board of equalization showing the name and address of the seller and the name and address of the purchaser, the number of gallons of gasoline so sold in words and figures and the date of such purchase * * *.''

On September 14, 1946, The California Company applied for a refund permit on forms provided by the State Board of Equalization. On that same date a Montana permit for refund of gasoline license tax was issued to The California Company and assigned a number, 57U-381. The California Company also submitted a claim for refund of gasoline tax on a form provided by the State Board of Equalization. This claim is sworn to on behalf of The California Company by the chief clerk in Denver, Colorado, on September 11, 1946. It shows the date of purchase and identifies the invoice number by date, shows the number of gallons as 13,051, and the number of gallons refund claimed as 12,790. It also contains the following statement: ''Gasoline

purchased from The Texas Company by claimant and loaded into two tank cars at refinery of said, The Texas Company, at Sunburst, Montana, on March 19, 1946, Car UTLX-20376, loaded with 6,527 gallons being consigned to Great Falls City Lines at Great Falls and car UTLX-18434, loaded with 6,524 gallons being consigned to the California Company at Butte. All of said gasoline spilled or leaked out of said tank cars as a result of derailment at Vaughn, Montana, while in transit.'' The amount of refund claimed was $639.50 and under the portion of the form which provides for a statement as to how the gasoline was used there is typed in the following: ''Loaded in tank cars at refinery of The Texas Company and lost in derailment of cars at Vaughn, the same day.'' Attached to this form was a separate statement of claim, supplementing attached printed form, which narrated the facts as to the purchase of the gasoline, the amount purchased, the derailment at Vaughn, Montana, and which was also sworn to by the chief clerk on behalf of The California Company on the 11th day of September 1946. Accompanying the claim was the tank car shipping notice and acknowledgment and an invoice from The Texas Company to The California Company showing the sale of Texaco gasoline in the amount of 296,402 gallons and a tax paid of $14,523.70 which was received by The Texas Company April 18, 1946. Also attached was a detail of shipments to The California Company from The Texas Company in March 1946 showing the date of shipment of a large number of cars of gasoline to various destinations in the state of Montana, including on the 19th of March shipment of car number UTLX-18434, 6,524 net gallons, to a destination at Butte, and on the same date car number UTLX-20376, net gallons 6,527, to Great Falls City Lines.

The State Board of Equalization contends that the claim for refund submitted together with the accompanying data does not conform to the provisions of the statute or the regulations of the state board of equalization and therefore the Great Northern Railway Company as assignee of the claim of The California Company is not entitled to the refund in that no invoice was

issued and delivered at the time of the sale of the gasoline on March 19, 1946; that the invoice submitted on April 16, 1946, was dated nearly one month after the alleged date of sale; that the submitted invoice was issued for a sale of 296,402 gallons of gasoline sold as of April 16, 1946, and not for the 13,051 gallons for which refund is claimed; the number of gallons is not shown in words and figures; the names and addresses of the seller and purchasers are not shown thereon; and it is not on a form approved by the defendant board and does not have a permit number and it is not signed by the seller.

The forms provided by the State Board of Equalization are designed to secure information for the board in the ordinary course of gasoline refunds. Admittedly the refund here sought is an exceptional case. The claimant has submitted a claim on the forms provided by the board and has complied with the board's requirements insofar as is possible to so comply under the conditions of the case. It does not describe the vehicles on which the gasoline was to be used because the gasoline was not used on any vehicles; the claim for refund did show that the gasoline was not used on the highway for the purpose of propelling vehicles which placed it in the position to claim a refund under this court's declaration in the previous appeal that ''the legislature simply intended to impose the tax on all gasoline used in propelling vehicles on the highways of the state and that the legislative assembly that passed the refund statute so understood it.''

The claim for refund could not be accompanied by an original invoice issued on March 19, 1946, because the claimant could not anticipate that the gasoline would be spilled by a derailment and therefore could not make the same preparation for claim for refund that could be made by a claimant in the ordinary course of business who knew that the gasoline purchased was to be used for purposes for which he was entitled to claim a refund.

It is contended that there is no permit number on the claim for refund as required, but the claim for refund on its face

shows that it was made out in Denver, on September 11, 1946, that the permit number was not issued by the State Board of Equalization until September 14, 1946. The claim was filed with the board of equalization on that same day. Therefore, the claim was filed and received the very day that the permit number was issued. Certainly if the claim was rejected for this reason the board should have so informed the company and required that the permit number issued that day be inserted therein or the board should have itself inserted the number it had just issued.

It is entirely proper that the State Board of Equalization ▮▮▮▮ require that information necessary to sufficiently identify the claim for refund shall be furnished upon forms provided and prescribed by the board and under a procedure that is convenient to it. However, where it has been decided that a claimant is entitled to a refund but the claim is such that it cannot be regularly itemized on the prescribed forms, the board cannot set up the failure to comply with technical portions of its regulations or of the statute as a reason for denying the claim. If that were true, it would give the board authority to deny valid claims by establishing regulations or providing forms with which claimants could not possibly comply. That is not the intent of the statute nor is it within the administrative powers of the board.

In this case the claimant has, insofar as it is possible under ▮▮▮▮ the circumstances, complied with the administrative regulations. It has by sworn statement submitted its application in conformity with the provisions of the statute and the rules of the board adding such other necessary identification as to indicate that the claim is not fraudulent and to identify it so that it cannot be paid again. Under these circumstances the claim submitted must be held to be valid and inasmuch as this court has previously held that the claimant is entitled to a refund upon filing of documents making a proper showing for such refund, it must be held that the claimant has substantially

complied with the administrative regulations and the requirements of the statute and is entitled to the refund.

The judgment of the district court is affirmed.

ASSOCIATE JUSTICE BOTTOMLY, took no part in the determination of this cause.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES FREEBOURN and ANGSTMAN, concur.