No. 12836

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE EX REL BILLINGS EDUCATION ASSOCIATION,
INC., a non-profit Montana corporation,

Plaintiff and Relator,

-vs-

THE DISTRICT COURT OF THE THIRTEENTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, in and for the
County of Yellowstone, and the HON. B. W. THOMAS,
presiding District Judge,

Defendants and Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Pedersen, Herndon and Harper, Billings, Montana
Donald R. Herndon argued, Billings, Montana

For Respondent:

Moulton, Bellingham, Longo and Mather, Billings,
Montana
William Bellingham argued, Billings, Montana

---

Submitted: August 19, 1974

Decided: August 26, 1974

Filed: DEC 12 1974          Dissent Filed: December 12, 1974

*Thomas J. Kearney*
Clerk

Hon. Gordon R. Bennett, District Judge, sitting in place of
Mr. Justice Frank I. Haswell, dissenting:

I cannot concur entirely with the order of the majority
or the reasoning behind the order because it denies all effect to
the "Professional Negotiations Act for Teachers", sections 75-
6115 through 75-6128, Revised Codes of Montana, 1947, hereinafter
referred to as "the Act". It must be presumed that the Legis-
lature intended the Act to make at least some substantive changes
in the existing law in order to accomplish the Legislative dec-
laration of policy and purpose expressed in section 75-6116, R.C.M.
1947. In holding that the board of education has "final authority"
as to negotiations with its teachers the majority has stripped the
Act of its meaning and returned the parties to their former posi-
tions as if the Act had never been passed. Statutes of this state
are to be construed according to the legislative intent. Courts
may only ascertain and declare what is contained in statutes and
must give effect to every provision if possible.

The Act expressly made major changes in the relationship
between teachers and their employing school boards. For the first
time in the history of this state, teachers were given the right
to bargain collectively as to negotiable conditions of employment
through representatives of their choice who function as the sole
representatives for all teachers in the "appropriate unit". Direct
negotiations between represented individual teachers and their
employer are prohibited. Both the representative of the teachers
and the school board have a duty to negotiate and bargain. The
intended result of the negotiations is to arrive at a master agree-
ment which must be reduced to writing and ratified. All individual
teacher contracts must conform to the master agreement. It is an
unfair labor practice for employing boards of education to interfere

- 2 -

with, restrain or coerce teachers in their right of self-organization or selection of a representative, or to refuse to negotiate in good faith. District courts of this state are granted jurisdiction to enjoin unfair labor practices as defined in the Act.

I cannot construe the foregoing provisions as giving boards of education "final authority". These sections expressly grant teachers of this state additional legal rights not previously recognized by statute and to the extent granted the authority of boards of education is diminished.

The Act requires good faith collective bargaining. Good faith bargaining can only occur between relative equals and is inherently impossible if either side has "final authority". The Act does not require agreement. What is required is continued good faith negotiations between the parties until a master agreement is agreed upon.

The relator teachers in this proceeding are attempting to enjoin the school board from issuing individual teacher contracts before a master agreement has been negotiated and ratified by the parties. If such issuance of individual teacher contracts constitutes an unfair labor practice within the meaning of section 75-6120, R.C.M. 1947, it may be enjoined. This is the sole issue before the Court and both parties agree that the unresolved issues preventing agreement are not relevant to this question. There is also no dispute concerning the fact that the school board is attempting to require teacher acceptance of individual contracts within a specified period of time at the penalty of forfeiture of the teacher's position.

Section 75-6102, R.C.M. 1947, requires written individual teacher contracts. Section 75-6122, R.C.M. 1947, requires master agreements to be reduced to writing and ratified. No statute directly provides that either type of contract should precede the

other. It is the duty of this Court to provide a construction which gives both provisions effect, if possible, consistent with the expressed legislative intent.

Individual contracts prior to ratification of a master agreement serve no useful or legitimate purpose. The offer and acceptance functions of contracting is now accomplished by "notices of re-election" of tenure teachers pursuant to section 75-6105, R.C.M. 1947, and of nontenure teachers pursuant to section 75-6105.1, R.C.M. 1947. Both sections require the teacher to accept the "re-election" in writing within 20 days or forfeit the position. By reason of these sections school boards are fully advised as to the identity of each teacher who agrees to teach during the forthcoming year within 20 days after the teacher has received the notice. The terms and conditions of the employment are required to be controlled by the master agreement. Individual teacher contracts cannot conform to a master agreement not yet in existence. Therefore, both statutory provisions requiring individual teacher contracts and master agreements as to teachers represented by a bargaining agent, respectively, are satisfied by requiring master agreement to precede the individual contracts.

I also disagree with the conclusion of the majority opinion that the respondent school board negotiated in good faith. Unilaterally offering represented teachers with the option of contracting individually with respect to negotiable conditions of employment or forfeiting their job does not even constitute bargaining, let alone "good faith" bargaining. It is a bare ultimatum and an absolute rejection of the clear intent and purpose of the Act.

The majority fails to recognize the statutory distinction between conditions of employment subject to "negotiations and bargaining" and all other matters and issues which remain within the sole discretion of the school board and are considered "meet

and confer" items only. Section 75-6119, R.C.M. 1947, defines and limits negotiations as follows:

"It shall be the duty of all employers acting as a board, or acting by and through a bargaining agent designated or employed by the employer, and all teachers, or a representative of teachers, to meet and confer for professional negotiation purposes at the request of either, except as provided by this act, to discuss matters relating directly to the employer-teacher relationship such as salary, hours and other terms of employment, and to negotiate and bargain for agreement on such matters. The matters of negotiation and bargaining for agreement shall not include matters of curriculum, policy of operation, selection of teachers and other personnel, or physical plant of schools or other facilities, however nothing herein shall limit the obligation of employers to meet and confer as provided in section 75-6118. * * *"

The ratification of a master agreement is the only conclusion provided in the Act to the duty to bargain in good faith as to negotiable conditions of employment. It contains no binding procedure to be used in the event that the parties should reach an impasse. This may be a serious weakness in the Act but courts are not permitted to pass on the wisdom of legislation. Union Carbide v. Skaggs Drug Center, Inc., 139 Mont. 15, 359 P.2d 644; Yellowstone Bank v. Bd. of Equal., 137 Mont. 198, 351 P.2d 904; Willett v. State Examiners, 112 Mont. 317, 115 P.2d 287.

Article X, Section 8, of the Constitution of Montana creates school boards as a constitutional entity but beyond that fact has no further relevance to the issues in this matter. The respondent school board has not argued that the Act is unconstitutional or that the school board is autonomous with respect to the state legislature. The findings of fact and conclusions of law of the district court which have, in effect, been affirmed by the majority did not rule on the constitutionality of the Act.

This Court should have accepted jurisdiction in this proceeding and held that issuance and offering individual teacher

contracts to teachers represented by a bargaining agent prior to ratification of a master agreement is an enjoinable unfair labor practice under the Act. The legislature must decide whether the Act requires amendment. The Court should enforce the Act according to its terms.

_____
Honorable Gordon R. Bennett sitting
in place of Mr. Justice Frank I.
Haswell.