No. 14474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

STATE OF MONTANA, ACTING BY AND
THROUGH THE DEPARTMENT OF HIGHWAYS
OF THE STATE OF MONTANA,

                Plaintiff and Appellant,

   -vs-

WILLIAM K. BURLINGAME et al.,

                Defendant and Respondent.

---

Appeal from:  District Court of the Fourth Judicial District,
             Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

    For Appellant:

        Terry Clausen argued, Helena, Montana

    For Respondent:

        K. M. Bridenstine argued, Polson, Montana
        Claude Burlingame, Plains, Montana

---

                Submitted:  February 1, 1979

                Decided: MAR 2 1979

Filed:

Thomas J. Kearney
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The State of Montana, Department of Highways, appeals from that portion of a judgment, awarding costs and attorney's fees in an eminent domain proceeding, entered by the Honorable E. Gardner Brownlee, Fourth Judicial District, Missoula County.

The State of Montana, Department of Highways, instituted eminent domain proceedings on January 26, 1977, after defendant refused its offer to acquire by purchase 1.32 acres of defendant's land in Missoula County. By stipulation, a preliminary order of condemnation was entered February 25, 1977. Pursuant to section 93-9910, R.C.M. 1947, now section 70-30-205 MCA, defendant, on March 14, 1977, filed an answer, claiming $85,000 as fair and just compensation for the land taken and for damage to the remainder. A value commission heard the matter August 10, 1977, and thereafter awarded defendant $53,900. Both parties appealed that determination.

A jury trial in District Court resulted in a verdict, issued June 21, 1978, for defendant in the amount of $39,750, of which $31,530 was deemed the value of the land taken and $8,220 the value of damage to the remainder. On June 27, 1978, defendant filed a memorandum of costs and disbursements, which the State moved to strike. A hearing on the motion to strike was held on July 11, 1978. Two days later the District Court entered an order denying the State's motion and awarding defendant costs and attorney's fees. The substance of that order was incorporated into the judgment awarding defendant $39,750, plus interest thereon at 10 percent per annum in the sum of $5,865.51. Of the addi-

tional $6,247.93 awarded as costs, $4,711.57 represents attorney's fees. No hearing on the reasonableness of the attorney's fees had been held.

The State raises two issues:

1. In an eminent domain proceeding where the District Court found the State's final offer was $43,100 and the jury verdict was $39,750, was it error for the District Court to award attorney's fees and costs?

2. Was it error for the District Court to award attorney's fees without an evidentiary hearing to determine the reasonableness of the fees awarded?

We find the trial court erred in awarding attorney's fees in this case because the private property owner did not prevail as required by law. In so holding, it is unnecessary to discuss the second issue.

Defendant argues that the offer of $43,100 was not the "final offer" made by the State. The State contends that its final offer was made in a letter dated June 8, 1978. The letter, addressed to K. M. Bridenstine, counsel for defendant, and signed by Donald A. Douglas, attorney for the Department of Highways, reads in toto:

"Dear K:

"This letter is to advise you that pursuant to the provisions of R.C.M., 1947, Section 92-9921.1, the State of Montana, Department of Highways, makes an offer in the sum of $43,100.00 plus necessary expenses of the condemnee accrued to this date and interest for all interests in the property which is the subject matter of the above entitled condemnation suit, being Cause No. 45474 in Missoula County, Montana."

Of significance is that the offer specifically includes "necessary expenses . . . accrued to this date." Thus, defendant's expenditures for "engineer's fees," incurred on

instruction by the District Court, would have been reimbursed by the State had the offer been accepted. The other "necessary expenses," including costs and reasonable attorney's fees, likewise would have been reimbursed.

The statute at the focal point of this dispute is section 93-9921.1, R.C.M. 1947, now section 70-30-305 MCA:

> "The condemnor, shall within thirty (30) days after an appeal is perfected from the commissioner's award or report, submit to condemnee a written final offer of judgment for the property to be condemned, together with necessary expenses of condemnee then accrued.
>
> "If at any time prior to ten (10) days before trial, the condemnee serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon judgment shall be entered. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible at the trial except in a proceeding to determine costs. The fact that an offer is made but not accepted does not preclude a subsequent offer. In the event of litigation, and when the private property owner prevails, by receiving an award in excess of the final offer of the condemnor, the court shall award necessary expenses of litigation to the condemnee." (Emphasis added.)

This statute implements Article II, Section 29 of the Montana Constitution, which in part provides that "[i]n the event of litigation [in an eminent domain proceeding], just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails." (Emphasis added.)

Section 93-9921.1 was interpreted by this Court in State Department of Highways v. Olsen (1975), 166 Mont. 139, 531 P.2d 1330. There the Court quoted language from the Constitutional Convention notes:

> "'Retains provision in 1889 constitution [Art. III, sec. 14] on eminent domain and expands its protection by guaranteeing that a property owner who goes to court and is awarded more money than

offered for his property being condemned will be reimbursed for the necessary expenses of the lawsuit (such as appraiser and attorneys fees).'" 166 Mont. at 145, 531 P.2d at 1333.

At issue in Olsen was whether the new statutory provision applied to an action pending at the time the right to costs, including attorney's fees, came into being. Although the issue differs from that in the instant case, certain dictum from Olsen is helpful, e.g., "The right to necessary costs of litigation provided by section 93-9921.1, R.C.M. 1947, does not arise when the suit is filed, but vests only when the private property owner prevails, securing a verdict higher than the State's final offer." 166 Mont. at 146, 531 P.2d at 1334. (Emphasis added.) It is clear that a private property owner, to be entitled to "necessary expenses of litigation," must prevail. To prevail, he must receive "an award in excess of the final offer of the condemnor," the State. Section 93-9921.1, R.C.M. 1947.

The following excerpt from the record of the Constitutional Convention debates, Vol. VII, pp. 5638-40, confirms this:

> "DELEGATE HABEDANK: Mr. Dahood, for the purpose of the journal in future litigation over the interpretation of this term, will you please state into the record, what is meant by the words, prevailing party?
>
> "DELEGATE DAHOOD: By prevailing party I mean, for the record, the property owner, in the event that he is the prevailing party. The only person intended by this particular section and the sentence that has been added -- just compensation shall be awarded by the court only -- just compensation shall include expenses of litigation only when the prevailing party is the private property owner.
>
> "CHAIRMAN GRAYBILL: Mr. Habedank.
>
> "DELEGATE HABEDANK: Mr. Dahood, I failed to ask the question properly. If the highway department offered the owner five thousand dollars for his property and the owner refused it and

went into court and secured a judgment from the jury for less than five thousand dollars, would he then be a prevailing party?

DELEGATE DAHOOD: He would <u>not</u> be a prevailing party.

"DELEGATE HABEDANK: If he obtained five thousand and one dollars, would he be a prevailing--

"DELEGATE DAHOOD: He would be a prevailing party.

DELEGATE HABEDANK: Thank you, Mr. Dahood.

"CHAIRMAN GRAYBILL: Is there any other discussion of section twenty-nine? Mr. Harlow.

"DELEGATE HARLOW: I merely wish to rise in support of this section. I want to ask Mr. Dahood the one question in between what Mr. Habedank -- had and the party received only the five thousand dollars. Would he be prevailing?

"DELEGATE DAHOOD: He is not the prevailing party in that instance.

"DELEGATE HARLOW: He's got to get one dollar more.

"DELEGATE DAHOOD: <u>He has to exceed the offer made by the State of Montana</u>."

To determine if the award of costs and attorney's fees was proper, the letter from the Highway Department attorney to defendant's attorney, quoted above, must be deemed an offer, either a final offer or a subsequent offer which has become a final offer in virtue of it being the last made by the State. Subsequent offers may be made, of course. Section 93-9221.1 includes this sentence: "The fact that an offer is made but not accepted does not preclude a subsequent offer."

The District Court judge, in the order dated July 13, 1978, deemed the offer made by the State in that letter a "final offer." In part the order recites:

"The matter was then set for trial by the Court for the 19th day of June, 1978. The State wrote a letter to the attorney representing the landowner and made an offer in the sum of $43,100.00

-6-

plus interest and plus necessary expenses. This offer was not accepted by the landowner and the matter went to trial. The jury trial resulted in a verdict in favor of the landowner for the sum of $39,750.00. The landowner then filed a Cost Bill asking for:

"Filing fees ---------------------------$20.00

"Stenographer's fees ---------------------$ 3.00

"Appraiser's fees (witness fees)----------$964.11

"Engineer's fees (sewer design) ----------$549.25

"Attorney's fees--------------------------$4,711.57

"The State then moved to strike the Cost Bill on the grounds and for the reason that the landowner did not get more than $43,100.00 which was the 'final offer' made by the State of Montana.

" . . .

"The 'final offer' made by the State of Montana in fact is in excess of the jury verdict plus the costs and disbursements requested by the Defendant in this action. From the time the appeal was filed until about ten days before the actual trial of the action the State never offered the landowner more than the original sum of $25,600.00. The State's delay in making the 'final offer' of $43,100.00 resulted in the landowner expending money for engineering fees for trial preparation. The Court finds that this delay on the part of the State in raising their offer from $25,600.00 to $43,100.00 actually required the landowner to expend money for trial preparation. In equity it appears to this Court that the landowner should be entitled to all of his costs and disbursements in view of the fact that the total of the costs and disbursements and the jury award does not exceed the 'final offer' made by the State of Montana." (Emphasis added.)

The State maintains that the offer of June 8, 1978, was a final offer per se as contemplated by statute. Even if that offer is not in and of itself a "final offer," contends the State, then it is a subsequent offer as contemplated by section 93-9921.1 and became a final offer in virtue of its being the last made by the State. The State cites State Department of Highways v. Olsen, 166 Mont. at 148, 531 P.2d at 1334, quoting that portion of section 93-9921.1 which

states that the fact that an offer is made but not accepted does not preclude a subsequent offer. The language of Olsen immediately following this is significant. The Court stated: "Thus, the State could have made an offer at any time prior to trial. . ." The State asserts that one of the principles of Olsen is that absent any subsequent offer, the State's offer made prior to the filing of a condemnation action will be deemed the State's final offer. Extrapolating from that principle, the State then contends that given the fact that it did make an offer subsequent to the one made before instituting the condemnation action, that is, the offer of June 8, 1978, that offer must be regarded as the State's final offer for purposes of determining whether defendant is entitled to costs and attorney's fees. We find that the last offer made, at least under the facts of this case, is the final offer. .

Counsel for defendant maintains that the only offer made by the State was $25,600--this in the face of acknowledging the June 8, 1978, letter and rejecting the offer made therein. It is contended that section 93-9921.1 requires that the State's final offer be made within thirty days after an appeal of the commissioner's award. The first sentence of that statute is repeated here: "The condemnor, shall within thirty (30) days after an appeal is perfected from the commissioner's award or report, submit to condemnee a written final offer of judgment for the property to be condemned, together with necessary expenses of condemnee then accrued."

Defendant then argues (1) that the State's offer cannot be deemed a "subsequent offer" because it was not subsequent to one made within thirty days after an appeal

-8-

from the commissioner's award, and (2) that the June 8, 1978, offer was not an offer of any sort, that it was void ab initio, even though in rejecting it, he treated it as an offer.

Defendant's counsel further charges that the "State can hardly hide its failure to follow Statutory mandate, though it seeks exculpation by terming its letter of June 8, 1978 a 'subsequent' offer." He then charges the State with taking "a last moment gamble on Attorney's fees and costs." Having anticipated these remarks, the State asserts first that "fairness and common sense" dictate that an offer labeled as a final offer, acted upon by the landowner as a final offer, is in fact a final offer as contemplated by section 93-9921.1. Secondly, the State argues that "constitutional provisions ought not to be frustrated by inadvertent violations of statutory procedure," citing Olsen in support of that declaration. Hidden in these remarks is the admission that the State inadvertently failed to make an offer within the thirty days after perfecting the appeal from the commissioner's award, but that it should not be penalized for such inadvertence, because the offer at least qualifies as a subsequent offer which became a final offer in virtue of its being the final (last) one made.

The concept of "final offer" was discussed in Rauser v. Toston Irrigation Dist. (1977), ___ Mont. ___, 565 P.2d 632, 641, 34 St.Rep. 496, 506. The Court said that, while it was understandable that the District Court did not wish to follow the statutory condemnation procedure in that case, this could not be used to deny the landowners their attorney's fees. The Court implicitly found that the District had made a "final offer" even though there was no "offer"

denominated as such or acted upon as such. The bid for work to be done to cure the problem of water seepage, rejected by the District as being too costly, was deemed the final offer for purposes of determining whether the landowner prevailed. The Court found that indeed the landowner had prevailed, as the jury award of $100,000 exceeded the "final offer" of the District-condemnor.

Although this case is not relied on by either party, it clearly supports the State's position. The lack of an offer within thirty days of perfecting appeal from the commissioner's award cannot be used to frustrate the intent of section 93-9921.1. The State, in the letter of June 8, 1978, specifically denominated the offer as an offer. In rejecting the offer, counsel for defendant treated the offer as an offer.

To prevail, the private property owner must have received an award in excess of the final offer of the condemnor. Defendant received an award of $39,750 from the jury; the State's final offer was $43,100. The former is less than the latter; thus defendant did not prevail as contemplated by the framers of the 1972 Constitution.

That portion of the judgment awarding attorney's fees is reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice John C. Sheehy dissenting:

It has seemed to me that this Court is reluctant to allow or award attorney fees.

In this case, however, the Court swings with a double-bladed axe. Not only is the attorney pruned of his rightful fee, but the client, a condemnee supposedly guaranteed his costs under the 1972 Montana Constitution, finds his constitutional recovery of costs cut to nothing. He must reach into his recovery in order to pay his expenses of litigation.

"Just compensation" is defined in the 1972 Mont. Const. Art. II, as follows:

> "Section 29. Eminent domain.
> Private property shall not be taken or
> damaged for public use without just
> compensation to the full extent of
> the loss having been first made to or
> paid into court for the owner. In the
> event of litigation, just compensation
> shall include necessary expenses of
> litigation to be awarded by the court
> when the private property owner prevails."
> (Emphasis added.)

What is lacking in the decision of this Court in this case is an understanding of the intention of the constitutional framers in adopting 1972 Mont. Const. Art. II, §29. Prior to 1972, there was no statutory provision for an offer during litigation by the Highway Department, because prior to 1972, each condemnee had to bear the considerable cost of litigation, including appraisers, engineers and attorney fees, out of any recovery he made. The landowner was forced many times to inadequate settlements because he couldn't win for losing, even though the previous constitution provided for "just compensation" for the owner (1889 Mont. Const. Art. III, §14).

Before 1972, as now, the Highway Department followed the practice of issuing a letter designated a "final offer", stating

-11-

separately the offer for land and for after-damage, <u>before</u>
litigation was commenced.  Before the "final offer" the
State and landowner were in contact many times, sometimes
for several years while the proposed construction went
through the long process from drawing board to contract-
letting.  It was when the contract was about to be let that
the State felt the compulsion to get out its letter of final
offer, for litigation then became necessary.

That background explains the dialogue of the delegates
to the 1972 convention.  The proposal in the condemnation
provision of the new constitution of 1972 was that "just
compensation" should include necessary costs of litigation
to the "prevailing party".  It was the contemplation of the
delegates that if the landowner, by litigation, proved that
the final offer received before litigation was insufficient,
he was the prevailing party and entitled to his costs of
litigation as a part of his "just compensation".

This background explains why the constitutional convention
notes appended to 1972 Mont. Const. Art. II, §29, state:

> "Retains provision in 1889 Constitution
> [Art. III, sec. 14] on eminent domain
> and expands its protection by guaranteeing
> that a property owner <u>who</u> <u>goes</u> <u>to</u> <u>court</u>
> and is awarded more money than offered
> for his property being condemned will be
> reimbursed for the necessary expenses
> of the lawsuit (such as appraiser
> and attorneys fees)."  (Emphasis added.)

In 1973, the State Highway Department (not the landowners)
went to the legislature to obtain the passage of Ch. 453,
Laws of Montana (1973) codified as section 93-9921.1, R.C.M.
1947, which reads as follows:

> "<u>Necessary</u> <u>expenses</u> <u>of</u> <u>litigation</u>.  The
> condemnor, shall within thirty (30) days
> after an appeal is perfected from the
> commissioner's award or report, submit to
> condemnee a <u>written</u> <u>final</u> <u>offer</u> <u>of</u> <u>judgment</u>
> for the property to be condemned, together with
> necessary expenses of condemnee then accrued.

"If at any time prior to ten (10) days before
trial, the condemnee serves written notice that
the offer is accepted, either party may then
file the offer and notice of acceptance together
with proof of service thereof and thereupon judgment
shall be entered.  An offer not accepted shall
be deemed withdrawn and evidence thereof is not
admissible at the trial except in a proceeding
to determine costs.  The fact that an offer is
made but not accepted does not preclude a
subsequent offer.  In the event of litigation,
and when the private property owner prevails, by
receiving an award in excess of the final offer
of the condemnor, the court shall award necessary
expenses of litigation to the condemnee."
(Emphasis added.)

Note especially that the only "final offer" described

in section 93-9921.1, now section 70-30-305 MCA is the one

which must occur within thirty days of the appeal of the

commissioner's award.  Any other later offer is a "subsequent

offer".  But it is the "final offer" under the statute that

fixes the right of the condemnee to attorney fees and costs

as a part of his recovery in just compensation.

One could assume that section 93-9921.1, now section

70-30-305 MCA is clear and unambiguous on its face, and

needs no interpretation.  In this decision, the Court abandons

its rule of State Department of Highways v. Olsen (1975),

166 Mont. 139, 148, 531 P.2d 1330.  In that case, the parties

had waived by stipulation the commission hearing (provided

in section 93-9912, R.C.M. 1947, now section 70-30-207 MCA)

and proceeded straight to jury trial on the issues.  The only

offer made by the State was before the litigation commenced.

The State claimed that since it had not made an offer within

thirty days of a commission decision, no "final offer" existed

and therefore, the prevailing condemnee could not collect

attorney fees.  The court rejected this contention saying:

"To adopt such a theory here would contravene
the intent of the statute and would violate
the constitutional mandate.  Article II,
Section 29, 1972 Constitution requires that
a landowner be compensated for necessary expenses

-13-

of litigation if he prevails. This constitutional
directive cannot be frustrated by inadvertent
or intentional violations of statutory procedure."
166 Mont. p. 147, 531 P.2d p. 1334.

Statutes are made to be obeyed, by the servants of the State as well as by the general public. Here the condemnee is being punished because the State failed to follow the mandate of the statute as to when the final offer should be made. To reach that unlawful result the majority decision equates "subsequent offer" with "final offer", but the "subsequent offer" here does not follow anything. Result: section 93-9921.1, now section 70-30-305 MCA, is tortured beyond recognition and the intent of the constitutional framers is thwarted.

The majority opinion cites Rauser v. Toston Irrigation District (1977), _____ Mont. _____, 565 P.2d 632, 641, 34 St.Rep. 496, 506, as authority for what it does in this case. Rauser is not authority for any issue in this case. In Rauser, there was involved an inverse condemnation, where no offers were made. There the court merely implied that a rejected compromise sum was an offer in order to award attorney fees to the prevailing party.

Today's decision sounds the final knell for the purposes of section 93-9921.1, now section 70-30-305 MCA. Not only is the statutory thirty-day requirement thrown out the window, but the Highway Department is given carte blanche to defeat the condemnee's right to attorney fees and costs by allowing the Highway Department to make its offer (final or subsequent, as you will) at any time, perhaps even during the trial and gamble on the outcome.

We have come full circle. The landowners are back where they were prior to 1972.

In my opinion Judge Brownlee understood the situation perfectly. I would affirm his decision.

_____
                 Justice

-14-